## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CASEY D. O'SULLIVAN, | ) Case No. 15-30173-can7 |
| Debtor. | ) |
| | ) |

### MEMORANDUM OPINION REGARDING DEBTOR'S MOTION TO AVOID JUDGMENT LIEN OF CRP HOLDINGS A-1, LLC UNDER §522(F)(1)

Casey D. O'Sullivan, Chapter 7 Debtor, moves the Court for an Order pursuant to 11 U.S.C. § 522(f)(1)(A) avoiding the judgment lien of CRP Holdings A-1, LLC. CRP objected to the motion and requested that the Court rule the matter based on the motion, objection and CRP's brief. Finding that the facts are undisputed, the Court is prepared to rule. The Court overrules CRP's objection and grants the Debtor's motion.

### *Jurisdiction*

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b), and there is no dispute that this is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

### *Findings of Fact*

The Debtor filed a voluntary petition for Chapter 7 relief on April 3, 2015. At the time of filing, the Debtor, a Missouri resident, owned a home jointly with his non-filing spouse. The home at 304 W. 1st Terrace is located in Lamar, Barton County, Missouri. There is no dispute that the Debtor and his wife acquired the home as a married couple some twenty years before the bankruptcy filing, in November 1995. There is also no dispute that the home is encumbered by a properly recorded deed of trust in favor of Heritage State Bank. The deed of trust, executed by both the Debtor and his wife, was recorded with the Barton County Recorder of Deeds in August 2004. The current balance on the note secured by the deed of trust, according to the schedules, is

1

$93,134.04. The value of the home as of the date of filing is also not in dispute; Debtor valued the home as worth $105,000, making his half interest worth $52,500.

On January 5, 2015,[1] in the Circuit Court of Platte County, Missouri, CRP obtained a default judgment, Case No. 13AE-CV02856, against Debtor and his business entities in the amount of $765,151.18. Although not relevant to this dispute, the judgment was for rent owed under a commercial lease that the Debtor had personally guaranteed. It is undisputed that CRP neither has a judgment nor any claim against the Debtor's wife. CRP recorded the Platte County judgment as a foreign judgment in Barton County, Case No. 15B4-CV00019, where the Debtor and his spouse reside, shortly thereafter, on January 26, 2015. Debtor then filed this bankruptcy approximately three months later.

Debtor claimed $15,000 of the home exempt on his Schedule C, pursuant to R.S.Mo. 513.475 and 11 U.S.C. 522(b)(3)(B) (tenancy by the entireties). No party has objected to the Debtor's claim of exemption. On April 3, 2015, Debtor filed a motion to avoid CRP's judgment lien (now in the amount of $770,949.00) under 11 U.S.C. § 522(f)(1)(A), asserting that the lien impaired the exemption in his homestead.  CRP filed a timely response.  CRP asserted that since its judgment lien was unenforceable against the home (the home being protected by the tenancy by the entireties exemption and CRP having no judgment or claim against the Debtor's wife), its judgment lien did not "attach" to the home. Since the judgment lien did not attach, CRP argued, it could not as a matter of law impair the Debtor's exemption and thus could not be avoided.

The Debtor submitted witness and exhibit lists in accordance with the local rules before the hearing. CRP did not submit any witness or exhibit lists but appeared through counsel. The Court announced that it was prepared to rule based on the undisputed facts but offered CRP an opportunity to brief the matter. CRP's brief reiterates its legal argument – that there is no lien to

---

[1]        The file stamp on the judgment incorrectly bears the date of January 5, 2014, not 2015.

2

avoid since the lien does not "attach" to the Debtor's exempt tenancy-by-the-entirety homestead, and that if there is no attached lien there can be no impairment of the exemption. In addition, CRP argues that it will be harmed if the Court avoids the lien; if Debtor's spouse pre-deceases him, CRP argues, the Debtor would own the home solely, unprotected by the tenancy-by-the-entirety exemption, and CRP would intend to enforce its judgment lien against the Debtor's home.

### *Conclusions of Law*

As always, the Court must start with the language of the statute. 11 U.S.C. § 522(f)(1)(A) provides that the debtor "may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is a judicial lien." Section 522(f)(2)(A) determines when a lien impairs an exemption:

> For purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –
> (i)    the lien;
> (ii)   all other liens on the property; and
> (iii)  the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Much has been written about § 522(f), none of which was referred to in CRP's brief. The Supreme Court addressed § 522(f)(1) in the context of liens arising under divorce judgment in 1991. *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). The Supreme Court explained that, before the enactment of § 522(f), judgment liens survived bankruptcy and could be enforced on exempt property, including otherwise exempt homestead property. *Id.* at 297. Congress instead enacted § 522(f) "with the broad purpose of protecting the debtor's exempt property." *Id.* According to the Supreme Court, § 522(f)(1), by its terms,

"extends this protection to cases involving the fixing of judicial liens onto exempt property." *Id*. Notably, "[w]hat specific legislative history exists suggests that a principal reason Congress singled out judgment liens was because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts." *Id*.

In this case, CRP argues that the Court should equate the "fixing" of a lien with the "attachment" of a lien. CRP contends that if the lien did not "attach" under applicable Missouri law, that there was no "fixing." The term "fixing" of a lien is not defined in the Code. The Supreme Court in *Farrey v. Sanderfoot* defines the "fixing" as a temporal event, or the event of "fastening of a liability" upon a debtor's interest. *Id*. at 296. Congress certainly understood the difference between "attachment" and "fixing" and could have used the term "attached" in § 522(f). Rather, it is more likely that Congress was aware that in some states judgment liens did not "attach" to exempt homestead and yet unavoided judgment liens still could impair a debtor's fresh start by interfering with a debtor's attempt to refinance or sell the property. *See generally In re Cisneros*, 257 B.R. 332, 335-37 (Bankr. D. N. Mex. 2000) and cases cited therein.

More importantly, CRP's argument that its judgment lien does not "attach" and therefore is not "fixed" is contrary to Missouri law. R.S. Mo. 511.350, governing judgment liens, expressly provides that judgments "shall be liens on the real estate of the person against whom they are entered, situate in the county for which or in which the court is held." The Court concludes as a matter of law that CRP's judgment lien – although perhaps not enforceable – certainly affixed upon the Debtor's home upon CRP's recording of its judgment in Barton County.[2] That is why, as CRP points out, it would be enforceable against the property if Debtor's wife were to predecease him.

---

[2]     CRP in its brief stated that the Court had suggested that the wording of §522(f) "might allow the Court to enter an Order that can be used to stop the possibility of the lien affixing in the future," and states that "a careful

Having determined that CRP's judgment lien affixed, the Court then turns to whether the lien impairs the Debtor's exemption. CRP argues that the lien cannot impair the exemption because in essence there is not equity. For a determination of whether equity is relevant to impairment the Court need look no further than § 522(f)(2)(A). Congress has expressly provided a formula for when an exemption is impaired in § 522(f)(2)(A).

Applying the formula here, the Court adds the judgment lien ($770,949.00) plus the other liens on the property ($93,134.04), plus the exemption ($15,000), for a total of $879,083.04. That amount clearly exceeds the value of the Debtor's interest, whether such value is the value of the indivisible whole ($105,000), or Debtor's half ($52,500). Thus, as a matter of law, CRP's judgment lien is deemed to impair the Debtor's exemption and is thus avoidable.

The 8th Circuit, in an opinion not cited by CRP, examined anomalies resulting from the § 522(f)(2)(A) formula, particularly with second liens, and concluded it had no choice but to apply the formula. *In re Kolich*, 328 F.3d 406, 410 (8th Cir. 2003). Although noting that it was not "entirely comfortable" with the equities of the strict application of the § 522(f)(2)(A) formula, the *Kolich* Court reasoned,

> [o]n the other hand, refusing to apply the statutory formula as written may result in denying deserving debtors the fresh-start advantage § 522(f) was enacted to provide -- for example, if a drop in market value has left exempt property over-encumbered by a judicial lien and a junior consensual lien, and the judicial lienholder insists upon foreclosure. With the competing equities both hard to weigh and finely balanced, our task is simply to apply § 522(f)(2)(A) as Congress wrote it.

---

reading" of § 522(f)" suggests that the section refers to actions which have already taken place. CRP misapprehends the Court's comments at the hearing and notes, in any event, that *Farrey v. Sanderfoot* has ruled that § 522(f)(1) does not apply to future events: "The gerund 'fixing' refers to a temporal event. That event – the fastening of a liability – presupposes an object onto which the liability can fasten. The statute defines this pre-existing object as 'an interest of the debtor in property.' Therefore, unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1)." Farrey v. Sanderfoot, 500 U.S. at 296 (emphasis in original).

*Id.* [3]

The bottom line is that whether CRP's lien is enforceable or not, it is avoidable under the plain language of § 522(f)(1)(A). And, even if CRP is correct, that somehow its lien is not one Congress intended to avoid, such that avoiding an unenforceable lien would be superfluous,[4] this Court may still determine that the lien should be avoided as impairing the exemption – particularly given CRP's express desire to enforce the lien post-discharge if Debtor's spouse dies. Such enforcement is exactly the sort of impairment of a debtor's fresh start that Congress intended to thwart in enacting § 522(f)(1).

A separate order will issue.

DATED: June 4, 2015

/s/ Cynthia A. Norton
United States Bankruptcy Judge

Parties to receive electronic notice.

---

[3]     *See also In re Moore*, 495 B.R. 1 (8th Cir. BAP 2013), rejecting an argument that because the debtor had no "equity" in the property, a judgment lien could not be avoided under § 522(f)(1). Equity is irrelevant to the determination of when a judicial lien can be avoided under the formula.

[4]     See In re McRoy, 204 B.R. 62 (Bankr. D. Kan. 1996) (judgment lien not avoidable since no judgment lien attached to the exempt Kansas homestead, and finding § 522(f)(1) "superfluous," but nonetheless avoiding the lien so as not to create a cloud on the debtor's title).

6