# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CASEY D. O'SULLIVAN, | ) Case No. 15-30173-can7 |
|     Debtor. | ) |
| | ) |

## MEMORANDUM OPINION REGARDING DEBTOR'S MOTION TO AVOID JUDGMENT LIEN OF CRP HOLDINGS A-1, LLC UNDER §522(F)(1)

This matter is before the court on remand from the Eighth Circuit. This court granted the motion of Casey D. O'Sullivan, a Chapter 7 debtor, to avoid a judgment lien of CRP Holdings A-1, LLC pursuant to 11 U.S.C. § 522(f)(1), and CRP appealed.[1] The Eighth Circuit bankruptcy appellate panel affirmed this court, noting however, that it had "serious doubts" about whether CRP had an enforceable lien at all.[2] The Eighth Circuit reversed, reasoning that this court had assumed CRP held a cognizable judicial lien under applicable Missouri law.[3] On remand, the Eighth Circuit directed this court to "determine whether CRP has a judicial lien on the property (either enforceable or unenforceable)."[4] The parties have briefed the issue and the court is ready to rule.

*Findings of Fact*

The facts are not disputed, and are restated only for purposes of background.

CRP obtained a default judgment against the Debtor in Platte County, Missouri Circuit Court. Three weeks later, CRP recorded the judgment in Barton County, Missouri, where the Debtor resides with his wife. When the Debtor filed Chapter 7 bankruptcy shortly thereafter, he

---

[1] *In re O'Sullivan*, No. 15-30173, 2015 WL 3526996 (Bankr. W.D. Mo. June 4, 2015).
[2] *In re O'Sullivan*, 544 B.R. 407, 412 n.5 (B.A.P. 8th Cir. 2016).
[3] *In re O'Sullivan*, 841 F.3d 786 (8th Cir. 2016).
[4] *Id.* at 790.

1

claimed his Barton County home, owned jointly with his nonfiling spouse, as exempt under the Missouri homestead exemption[5] and the doctrine of tenancy by the entireties ("TBE"). He also filed a motion to avoid CRP's judgment lien. CRP objected to the motion, arguing that because its judgment lien did not attach to the exempt TBE property, the lien did not impair the TBE exemption and thus could not be avoided under § 522(f)(1). Contradictorily, CRP also argued it would be harmed if the court avoided its lien, since it intended to enforce its lien against the Debtor's property when and if the Debtor's spouse died. In the interim, CRP did not object to the discharge of its debt, and the Court entered a discharge order in due course.

In its opinion, the Eighth Circuit noted that it, like the BAP, had serious doubts about whether CRP had a lien that affixed to the Debtor's real property.[6] Although recognizing the broad definition of "judicial lien" in 11 U.S.C. § 101(37), the Eighth Circuit observed that Missouri narrowly defines "real estate" – for purposes of whether a judgment constitutes a lien against real estate – as an interest in property "liable to be sold upon execution."[7] Citing cases from Missouri and other states recognizing TBE, the Court pointed that there is thus "a strong argument that CRP did not obtain any lien on the property."[8] The Court recognized a distinction between unenforceable and nonexistent liens, however, expressly agreeing with the BAP that an unenforceable lien would nonetheless be avoidable under § 522(f)(1). The Court concluded by directing the parties to only one of two possible results on remand:

> In sum, if under Missouri law CRP's notice of foreign judgment failed to give rise to a lien on [the Debtor's] exempt homestead property, the debt would have been dischargeable through the bankruptcy proceedings. [The Debtor] would then not need to resort to § 522(f) to avoid CRP's judgment. Alternatively, [the Debtor] could move to avoid the lien under § 522(f)(1) if CRP's notice of foreign

---

[5] Mo. Rev. Stat. § 513.475 allows a $15,000 homestead exemption.
[6] *O'Sullivan*, 841 F.3d at 789.
[7] *Id.* (citing Mo. Rev. Stat. § 511.010).
[8] *Id.*

2

judgment fastened an existent, but presently unenforceable, lien on his exempt property.[9]

## *Discussion*

Notwithstanding the clear choice behind Door No. 1 or Door No. 2, CRP attempts to convince this Court that the Eighth Circuit left open a Door No. 3: a path to allow CRP to escape avoidance of its lien now, only to have that lien magically appear and attach to the Debtor's "survivorship interest" in the home upon the Debtor's spouse's death. CRP's argument is outside the scope of the remand and lacks all merit.

First, both of the higher courts in this case were correct to surmise that CRP's judgment was not an enforceable lien against the Debtor's TBE property under Missouri law when the Debtor filed bankruptcy. In fact, Missouri courts have recognized continually since at least 1895 that a judgment does not create a lien against an entirely exempt homestead property based on Missouri's definition of "real estate" as property "liable to be sold upon execution."[10]

Second, the reason this court assumed CRP had a cognizable and avoidable lien under § 522(f)(1) is that CRP treated its judgment as a lien. That is clear from CRP's actions here, in recording the judgment lien as a foreign judgment in the county where the Debtor owned his exempt home and in challenging the lien avoidance on contradictory grounds.

CRP's actions are also consistent with how other parties to a real estate transaction – buyers, sellers, lenders, and most importantly, title companies – treat judgments post-discharge, as liens to be cleared before a transaction may proceed. In the court's experience, seasoned debtors' counsel err on the side of caution by filing appropriate § 522(f)(1) lien avoidance motions. When they do so, they may avoid exactly what is happening in this case now –

---

[9] *In re O'Sullivan,* 841 F.3d at 790.

[10] *See, e.g., Macke v. Byrd*, 33 S.W. 448 (Mo. 1895); *Smith v. Thompson*, 69 S.W. 1040 (Mo. 1902); *Mahen v. Ruhr*, 240 S.W. 164 (Mo. 1922); *Baker v. Lamar*, 140 S.W.2d 31 (Mo. 1940). Mo. Rev. Stat. § 511.010 and its predecessors have contained the same language defining "real estate" since at least 1895.

expensive and protracted arguments about whether or not the judgment is a lien.[11] In effect, an unavoided but unenforceable judgment lien gives a judgment creditor post-discharge leverage; if a debtor does not pay something, the judgment lien creditor may not cooperate by releasing the worthless lien that never attached in the first place. The alternative – a rush to bankruptcy court to reopen the bankruptcy case to obtain an order avoiding the lien before the buyer, seller, lender or title company backs out of the proposed transaction – is a similarly unpalatable option.[12]

CRP thus did not have a judgment lien against the Debtor under Missouri law when the Debtor filed his chapter 7 bankruptcy case. But that does not, however, end the inquiry. As the Eighth Circuit points out, the Bankruptcy Code in § 101(36) defines a judicial lien as "a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." Likewise, the Bankruptcy Code defines what is a "lien": "[t]he term 'lien' means charge against *or interest in property* to secure payment of a debt or performance of an obligation."[13] And with the filtering lens of these definitions, the court *then* looks to applicable state law to see if a particular judgment constitutes a "judgment lien" within the meaning of the Bankruptcy Code.

There is no question that a judgment, even against entirely exempt TBE property, may constitute a "cloud" against title. The question is whether a "cloud" may constitute an "interest in property" under Missouri law such that the "cloud" may be considered a "lien" and thus avoided as a "judicial lien" for purposes of overriding bankruptcy law. Although other states may treat

---

[11] These lien avoidance motions are routinely filed even against judgments arising out of an associate circuit court, which by statute do not create liens in Missouri. The form for doing so is often part of the software package for filing the bankruptcy case, as was the form lien avoidance filed in this case.

[12] The filing fee to reopen a Chapter 7 bankruptcy case is currently $260. In this district, a motion to reopen requires a 21-day notice, unless expedited. L.R. 1017-1.E., L.R. 5010-1. A motion to avoid a judgment lien is typically granted without a hearing if properly served and no party objects within 14 days. Note that lien avoidance motions under § 522(f) are governed by Fed. R. Bankr. P. 4003(d), which treats them as contested matters under Rule 9014, and not as adversary proceedings under Rule 7001. *See* Fed. R. Bankr. P. 7001(2).

[13] 11 U.S.C. § 101(37) (emphasis added).

"clouds" differently, under Missouri law, a judgment against TBE property is a cloud that gives rise to an "interest in property" such that it may be avoided under § 522(f)(1).

The *Mahen*[14] case illustrates the point. *Mahen* has convoluted facts, but, in essence, an estranged husband and wife each attempted to convey their interests in their TBE property, the husband by conveying the property to his children, and the wife by executing a temporary alimony order against the property. At the execution sale, the wife's agent colluded with the sheriff to have a sheriff's deed issued in the name of the agent's clerk for no consideration; forged the wife's name on a deed; and had his clerk mortgage the property to a third party. The third party subsequently sought to foreclose the deed of trust. In the subsequent equitable action by the husband, wife and children[15] to enjoin the foreclosure and set aside the fraudulent sheriff's deed and deed of trust, the defendants argued that plaintiffs had an adequate remedy at law such that no grounds for equitable relief existed. The circuit court agreed, and dismissed the suit. On appeal, the Missouri Supreme Court reversed.

The Missouri Supreme Court observed that it was true the husband's conveyance and the wife's judgment were void in that neither was effective as against the TBE property, such that they had an adequate remedy at law. Nonetheless, the Court said the question "is whether all these void instruments are a cloud upon the title which would warrant the interposition of a court of equity."[16] The Court focused on the practical difficulties of a party examining the respective conveyances and judgment to determine if they were void or not:

> Here the title was held by the entireties. To the ordinary abstracter, or to the lay mind, a distinction might not be discovered between a deed by the entireties and a joint tenancy or a tenancy in common. Certain words might change the entire

---

[14] *Mahen v. Ruhr*, 240 S.W. at 166.
[15] The suit was originally brought by the husband, then a child and his trustee were joined as co-plaintiffs. The suit is captioned in the name of the wife, however, and it is not clear in the opinion how or when she became a plaintiff.
[16] *Mahen v. Ruhr*, 240 S.W. at 166.

5

> effect of the instrument. Here was a conveyance, regular on its face, made by [husband], and purporting to convey his interest. Here was a deed, regular on its face, which purported to convey the interest of [wife]. Here was a sheriff's deed reciting a judgment and execution in due form. So far as the record shows, the casual observer would not penetrate the difference and ascertain that all these conveyances were void from the inability of the owners to convey. . . . We think the record sufficiently shows a cloud upon the title to warrant the interposition by a court of equity.[17]

The same practical difficulties observed by the Missouri Supreme Court in 1922 exist today. The clerk who accepted CRP's judgment for recording in Barton County would not know if the judgment created a lien or not. An abstractor or title company would not know if the Debtor's real estate was "liable to be sold on execution." Perhaps, although the deed said "husband and wife," they were not married at the time? Perhaps the four unities of title[18] did not exist at the time the Debtor and his wife acquired the property, such that the TBE presumption might be defeated? Perhaps the Debtor (or his wife) had taken some other action to sever the tenancy? Perhaps one or the other had died? Perhaps the homestead had been abandoned as of the time the judgment was recorded? Indeed, Missouri also recognizes that although a judgment lien does not attach to an exempt homestead, it will attach *"the moment"* the cover of the homestead is removed if the real estate is abandoned.[19]

If a Missouri judgment is a "cloud" sufficient to give Missouri courts jurisdiction to remove it even though the judgment gives rise to no lien and all attempts to execute on it as against an exempt property are void; if a Missouri judgment has sufficient force to spring "in a moment" to become a lien, then it certainly must be said to give the judgment creditor "an interest in property." The Eighth Circuit expressly held that the Debtor "could move to avoid the

---

[17] *Mahen v. Ruhr*, 240 S.W. 164, 166 (Mo. 1922).
[18] *In re Brewer*, 544 B.R. 177, 181 (Bankr. W.D. Mo. 2015) (interest, title, time, and possession).
[19] *Smith v. Thompson*, 69 S.W. 1040, 1042 (Mo. 1902) (emphasis added).

lien under § 522(f)(1) if CRP's notice of foreign judgment fastened *an existent, but presently unenforceable, lien* on his exempt property.[20]

Given that CRP's judgment could become a lien the moment the Debtor vacates the property or his spouse dies, this court concludes that CRP's notice of foreign judgment "*fastened an existent, but presently unenforceable lien*" properly avoided under § 522(f)(1). In the alternative, under Missouri law, the recording of CRP's judgment in Barton County where the Debtor's exempt real estate was located vested CRP with "an interest in property" as a result of the otherwise unenforceable judgment, such that its resulting "judicial lien" as defined by the Bankruptcy Code should likewise be avoided under § 522(f)(1).

CRP attempts to avoid this result by citing to a case applying Tennessee law, *In re Arango*.[21] Although CRP's argument is exceedingly difficult to follow, the court understands it thusly: we have no judgment lien on any "present possessory interest" of the Debtor; we do have a lien on Debtor's future "right of survivorship"; and because our lien is not avoidable now, it has survived the discharge such that we can – as of a moment, perhaps? – spring it on the Debtor if his wife dies.

Whether or not *Arango* reached the correct result under Tennessee law, the Debtor here is correct that *Arango* does not apply. First, this argument is a "Door No. 3 argument" that is outside the scope of the remand.

Second, and more importantly, Missouri law does not recognize the "right of survivorship" as being a different title or right than the original TBE interest. Rather, Missouri

---

[20] *O'Sullivan*, 841 F.3d at 790 (emphasis added).
[21] 992 F.2d 611 (6th Cir. 1993).

law is clear that upon the death of one of the TBE tenants, the surviving tenant "does not acquire new title, but holds only the same title he or she took in the beginning … ."[22]

*Conclusion*

The Bankruptcy Code recognizes only three types of mutually exclusive liens – consensual, statutory, and judicial.[23] Debtors' powers to avoid judicial liens that would otherwise encumber their exempt property are crucial to preserving those debtors' fresh start.[24] The reason these powers are crucial is vividly illustrated here – a judgment creditor with admittedly no enforceable lien and a discharged debt has nonetheless held up this Debtor's fresh start for almost two years and continues to threaten to do so – notwithstanding more than 120 years of unbroken Missouri law proclaiming that it has no enforceable rights against this Debtor's property. Even if this court is wrong in its interpretation of Missouri law, §§ 101(36), (37), and 522(f)(1) should be broadly construed under § 105(a) in favor of a debtor's fresh start – and the bankruptcy court given the same equitable powers the Missouri courts recognize to ensure that CRP does not unduly leverage this Debtor or his fresh start in the future.[25]

A separate order will issue.

DATED: March 17, 2017.

/s/ Cynthia A. Norton
United States Bankruptcy Judge

---

[22] *Frost v. Frost*, 98 S.W. 527, 528 (Mo. 1906) (the title is held "freed of the contingency," the contingent prospect of "owning it all.")
[23] *E.g., Ferrey v. Sanderfoot*, 500 U.S. 291 (1991); 11 U.S.C. § 101(36), (51), (53).
[24] *Ferrey v. Sanderfoot*, 500 U.S. at 297-98.
[25] A debtor in this Debtor's situation – with an entirely exempt homestead – should be allowed to employ § 522(f)(1) to protect his exemption and fresh start the same as a debtor with only a partial homestead exemption. To read § 522(f)(1) otherwise makes no sense.