# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-3226
_____

In re: Casey Drew O'Sullivan

*Debtor*

------------------------------

CRP Holdings A-1, LLC

*Appellant*

v.

Casey Drew O'Sullivan

*Appellee*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: September 26, 2018
Filed: February 1, 2019

_____

Before SMITH, Chief Judge, MELLOY and STRAS, Circuit Judges.

_____

SMITH, Chief Judge.

CRP Holdings, A-1, LLC (CRP) appeals the Bankruptcy Appellate Panel's (BAP) decision affirming the bankruptcy court's order holding that CRP has an unenforceable judicial lien against the real property of the debtor, Casey Drew O'Sullivan, and avoiding that lien pursuant to 11 U.S.C. § 522(f)(1). We affirm.

## I. *Background*

O'Sullivan and his wife acquired a residence as tenants by the entirety in November 1995. The residence is located in Barton County, Missouri ("property"). On January 5, 2015, CRP obtained a $765,151.18 default judgment in the Circuit Court of Platte County, Missouri, against O'Sullivan. The judgment did not include Sullivan's wife. CRP then filed a notice of foreign judgment, registering the judgment on January 26, 2015, in the Circuit Court of Barton County, Missouri, in an attempt to obtain a judicial lien on the property owned by the O'Sullivans as tenants by the entirety. *See* Mo. Rev. Stat. § 511.440.

On April 3, 2015, O'Sullivan filed a voluntary Chapter 7 bankruptcy petition, which his wife did not join. O'Sullivan listed the property in his schedules and claimed a $15,000 homestead exemption under both Mo. Rev. Stat. § 513.475 and 11 U.S.C. § 522(b)(3)(B). CRP did not object to O'Sullivan's claimed exemptions. O'Sullivan simultaneously moved to avoid CRP's purported judicial lien under 11 U.S.C. § 522(f)(1), asserting that the lien impaired his claimed homestead exemption. CRP objected to the motion. While acknowledging that it had a judgment lien, CRP argued that its judgment lien did not attach to the property. Consequently, CRP asserted that its lien did not affix upon the property nor impair O'Sullivan's exemption for lien-avoidance purposes.

The bankruptcy court granted O'Sullivan's motion to avoid CRP's lien on the property. It concluded that "'CRP's judgment lien—although perhaps not enforceable—certainly affixed upon [O'Sullivan's] home upon CRP's recording of its judgment in Barton County' and therefore impaired O'Sullivan's claimed

-2-

exemption." *CRP Holdings, A–1, LLC v. O'Sullivan (In re O'Sullivan)*, 841 F.3d 786, 788 (8th Cir. 2016) (alteration in original).

CRP appealed to the BAP, which affirmed the bankruptcy court's order. The BAP likewise concluded that "an unenforceable judgment lien arose" on the property held by the entireties. *CRP Holdings, A–1, LLC v. O'Sullivan (In re O'Sullivan)*, 544 B.R. 407, 413 (B.A.P. 8th Cir.), *vacated*, 841 F.3d 786 (8th Cir. 2016). Therefore, the BAP reasoned, it was "possible for [O'Sullivan] to avoid it under § 522(f)." *Id.* CRP appealed the BAP's affirmance of the bankruptcy court's order avoiding its purported judicial lien.

On appeal to this court, "CRP challenge[d] the BAP's conclusion that O'Sullivan could avoid its purported judicial lien on the property." *In re O'Sullivan*, 841 F.3d at 788. "The only contested issues on appeal [were] whether a judicial lien existed and, if so, whether that lien affixed on O'Sullivan's interest in the property." *Id.*

We identified a threshold question that neither party had addressed—"whether CRP had a judicial lien properly subject to avoidance under § 522(f)(1)(A)." *Id.* at 788–89. Ultimately, we "decline[d] to undertake the question of whether there is a cognizable lien under § 522(f)(1) in the first instance." *Id.* at 790. We opted to vacate the BAP's decision and remand "to the bankruptcy court for it to determine whether CRP has a judicial lien on the property (either enforceable or unenforceable)." *Id.*

On remand, the bankruptcy court held that CRP possessed an unenforceable judicial lien against O'Sullivan's property and granted O'Sullivan's motion to avoid the lien. In reaching its conclusion, the bankruptcy court noted that this court "direct[ed] the parties to only one of two possible results on remand." *In re O'Sullivan*, 569 B.R. 163, 165 (Bankr. W.D. Mo. 2017), *aff'd*, No. 17-6012, 2017 WL 4844244 (B.A.P. 8th Cir. Sept. 22, 2017). The bankruptcy court could find (1)

the debt was dischargeable through the bankruptcy proceedings because CRP's notice of foreign judgment failed to give rise to a lien on O'Sullivan's exempt homestead property, or (2) the lien is avoidable under § 522(f)(1) because CRP's notice of foreign judgment secured an either enforceable or unenforceable lien on the exempt property. The bankruptcy court opted for door number two. First, it found that "CRP's judgment was not an enforceable lien against the Debtor's [tenancy by the entirety] property under Missouri law when the Debtor filed bankruptcy." *Id.*

Second, it explained its assumption that "CRP had a cognizable and avoidable lien under § 522(f)(1)" based on "CRP's actions . . . in recording the judgment lien as a foreign judgment in the county where the Debtor owned his exempt home and in challenging the lien avoidance on contradictory grounds." *Id.* at 166.

Third, the court concluded that CRP had no "judgment lien against the Debtor under Missouri law when the Debtor filed his Chapter 7 bankruptcy case." *Id.* Significantly, the court also noted that the case required further analysis. This was because "§ 101(36) defines a judicial lien as 'a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.'" *Id.* (quoting 11 U.S.C. § 101(36)). Furthermore, "lien" is defined as a "charge against *or interest in property* to secure payment of a debt or performance of an obligation." *Id.* (quoting 11 U.S.C. § 101(37)). The court then looked to Missouri law to determine whether a "judgment lien" existed under the Bankruptcy Code. *Id.* The court determined that under Missouri law, a judgment against tenancy-by-the-entirety property is a "'cloud' against title" giving rise to an "interest in property" such that it may be avoided under § 522(f)(1). *Id.* at 166–67 (citing *Mahen v. Ruhr*, 240 S.W. 164 (Mo. 1922)). The court concluded that CRP's judgment could become a lien if O'Sullivan vacated the property or his spouse died. Thus, "CRP's notice of foreign judgment '*fastened an existent, but presently unenforceable lien*' properly avoided under § 522(f)(1)." *Id.* at 168. Alternatively, the court held that CRP's recording of its "judgment in Barton County where the Debtor's exempt real estate was located vested CRP with 'an

Appellate Case: 17-6012     Page: 4     Date Filed: 02/01/2019 Entry ID: 4752109

interest in property' as a result of the otherwise unenforceable judgment, such that its resulting 'judicial lien' as defined by the Bankruptcy Code should likewise be avoided under § 522(f)(1)." *Id*.

The BAP affirmed. The BAP, like the bankruptcy court, determined that CRP did not have a lien under Missouri law because O'Sullivan's property was owned jointly with his spouse as tenants by the entirety. The BAP also concluded that the existence of a lien for purposes of § 522(f)(1) is determined by looking to state law in the context of the Bankruptcy Code's definitions of the terms "judicial lien" and "lien" under §§ 101(36) and (37). The BAP construed these terms broadly. Like the bankruptcy court, the BAP concluded that CRP's recording of the notice of foreign judgment created a cloud on O'Sullivan's title on his exempt homestead. Under Missouri law, this cloud constituted a "charge against or interest in property" and thus qualified as a "judicial lien." *CRP Holdings, A–1, LLC v. O'Sullivan (In re O'Sullivan)*, No. 17-6012, 2017 WL 4844244, at *3 (B.A.P. 8th Cir. Sept. 22, 2017) (quoting 11 U.S.C. § 101(36)–(37)). The BAP concluded that a cloud on title may warrant a court in removing it. The BAP also noted the "practical difficulties" that exist for an "ordinary searcher of the records or even a title company [in] trying to determine whether the judgment created a lien." *Id.* at *4. This could, the BAP explained, impact the property's marketability of title and value. Furthermore, the court found that "CRP's judgment 'could become a lien the moment the . . . [Debtor's] spouse dies.'" *Id.* (alteration and ellipsis in original) (quoting *In re O'Sullivan*, 569 B.R. at 168). The court found that applying § 522(f) would clear the cloud on the title caused by CRP's recording of its judgment, which "'*fastened an existing, but presently unenforceable lien*' on the Property." *Id.* (quoting *O'Sullivan*, 569 B.R. at 168).

## II. *Discussion*

On appeal, CRP argues that the bankruptcy court erred in granting O'Sullivan's motion to avoid CRP's purported judicial lien. CRP contends that under Missouri

-5-

law, its notice of foreign judgment does not create an enforceable lien, unenforceable lien, or cloud upon title; instead, it represents a contingent future interest that may vest upon the happening of a future event.

"When reviewing a decision of the BAP, we act as a second reviewing court of the bankruptcy court decision, independently applying the same standard of review as the BAP. This appeal turns on the bankruptcy court's interpretation of law which we review de novo." *In re O'Sullivan*, 841 F.3d at 788 (cleaned up).

"To shield exempt property from . . . post bankruptcy collection efforts, 11 U.S.C. § 522(f)(1) provides a mechanism for bankruptcy courts to avoid, or extinguish, secured debts that would otherwise pass through the bankruptcy proceeding." *Id.* Section 522(f)(1) provides, in relevant part, that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [§ 522(b)], if such lien is . . . a judicial lien." 11 U.S.C. § 522(f)(1)(A). "To avoid the fixing of CRP's purported judicial lien, O'Sullivan therefore had to establish that CRP's notice of foreign judgment had (1) created an avoidable lien under § 522(f)(1), that (2) affixed on O'Sullivan's interest in property exempted under § 522(b), and (3) impaired O'Sullivan's claimed exemption in the property." *In re O'Sullivan*, 841 F.3d at 788.

As in the prior appeal, the only contested issues "are whether a judicial lien existed and, if so, whether that lien affixed on O'Sullivan's interest in the property." *Id*.

> The bankruptcy code defines "judicial liens" as liens "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). Judicial liens are a subset of "liens," which are defined as "charge[s] against or interest[s] in property to secure payment of a debt or performance of an obligation." 11 U.S.C.

-6-

> § 101(37). This definition of "liens" suggests that both unenforceable "charge[s] against" property and enforceable "interest[s] in" property fall within its scope. That interpretation is bolstered by the legislative history of the Bankruptcy Reform Act which itself states that the definition of lien is "very broad" and "includes inchoate liens." S. Rep. No. 95–989, at 25 (1978); H.R. Rep. 95–595, at 312 (1977).

*Id*. at 789 (alterations in original).

Given the broad definition of "judicial liens," "unenforceable liens may be avoided under § 522(f)(1)." *Id.* "The distinction between an existent but unenforceable lien and a non existent lien is relevant to an avoidance analysis under § 522(f)(1)." *Id.* We look to state law to determine whether a debtor "possessed an interest to which [a] lien fixed, before it fixed." *Id.* (alteration in original) (quoting *Farrey v. Sanderfoot*, 500 U.S. 291, 299 (1991)). "Fixed" means "to 'fasten a liability upon.'" *Id.* (quoting *Farrey*, 500 U.S. at 296). "When there is no lien under state law, however, there is nothing to 'fasten' upon the property and give rise to an unenforceable lien." *Id.* As a result, "§ 522(f) is superfluous and without application." *Id.* (quoting *In re Sanders*, 39 F.3d 258, 262 (10th Cir. 1994)).

As we recognized in the prior appeal, our sister circuits have distinguished between "existent but presently unenforceable liens and nonexistent liens." *Id.* at 789–90. Persuaded by our sister circuits' distinctions, we "conclude[d] that where a judgment gives rise to an unenforceable lien, a debtor may move to avoid that lien under § 522(f). When a judgment fails to give rise to any judicial lien (including an unenforceable lien), however, § 522(f)(1) is superfluous and without application." *Id.* at 790.

As we previously framed the issue, the question presented is whether, under Missouri law, CRP's notice of foreign judgment gave rise to a lien on O'Sullivan's exempt homestead property. If it *did* give rise to a lien, then O'Sullivan appropriately

-7-

moved under § 522(f)(1) to avoid the lien, even if that lien is existent, but presently unenforceable. If CRP's notice of foreign judgment *did not* give rise to a lien, then "the debt would have been dischargeable through the bankruptcy proceedings." *Id.* To answer this question, we look to Missouri law.

> Entireties property "is owned by a single entity, the marital community." *Fed. Nat'l Mortg. Ass'n v. Pace*, 415 S.W.3d 697, 703 (Mo. Ct. App. 2013). Missouri state court judgments, such as the default judgment CRP obtained against O'Sullivan, are "lien[s] upon the *real estate* of the person against whom such judgment . . . is entered" located within the same county as the judgment. Mo. Rev. Stat. § 511.440 (emphasis added); *see also* Mo. Rev. Stat. § 511.350. Thus, when CRP filed its notice of foreign judgment, it created a judicial lien on any "real estate" owned by O'Sullivan in Barton County. "Real estate" itself is narrowly defined as an interest in property "liable to be sold *upon execution*." Mo. Rev. Stat. § 511.010 (emphasis added). Here, because the real estate was held as entireties property, neither spouse arguably had "a separate interest [in that property] *subject to execution*," and a judgment filed against only one spouse could not "constitute a lien on the [entireties] property." *Baker v. Lamar*, 140 S.W.2d 31, 35 (Mo. 1940) (emphasis added).

*Id.* at 789 (alterations and ellipsis in original).

In the prior appeal, we expressed our "serious doubts as to whether CRP has a lien that affixed onto O'Sullivan's interest in the property." *Id.* In fact, based on the aforementioned Missouri case law, we found "a strong argument that CRP did not obtain any lien on the property." *Id.* Crucially, however, we declined to "definitively rule on the avoidance motion in the absence of such a finding." *Id.*

Now, after remand and return to our court, the decision to decline to determine the avoidance motion in the first appeal has proven prudent. With respect to tenancy by the entirety, Missouri law recognizes that "[a] judgment against one [spouse]

-8-

would not constitute a lien on the property since neither [spouse] has a separate interest subject to execution." *Baker*, 140 S.W.2d at 35. Despite the absence of a lien, Missouri law nonetheless recognizes that courts must act in equity to clear a cloud upon a title to real estate that is not apparent on the face of the document. *See Mahen*, 240 S.W. at 164. In *Mahen*, a complex set of transactions occurred resulting in conveyance instruments that the court declared void because the property was held as tenants by the entirety. These conveyance documents included a sheriff's deed reciting a judgment and execution, where the execution was against only the husband's interest that was not subject to levy and was based on a nonexistent judgment against him. *Id.* at 166 ("[T]he levy and sale under execution was void because the interest of [the husband] was not subject to levy."). After acknowledging the conveyance instruments were "void," the court considered "whether all these void instruments are a cloud upon the title which would warrant the interposition of a court of equity." *Id.* The court recognized the rule that "where the record does not show on its face to the ordinary searcher of the record . . . the invalidity of the instrument attacked[,] the court will interfere to remove the cloud." *Id.* Applying this rule, the court held:

> Here the title was held by the entireties. To the ordinary abstracter, or to the lay mind, a distinction might not be discovered between a deed by the entireties and a joint tenancy or a tenancy in common. Certain words might change the entire effect of the instrument. Here was a conveyance, regular on its face, made by Mahen, and purporting to convey his interest. Here was a deed, regular on its face, which purported to convey the interest of Josephine Mahen. Here was a sheriff's deed reciting a judgment and execution in due form. So far as the record shows, the casual observer would not penetrate the difference and ascertain that all these conveyances were void from the inability of the owners to convey. . . . We think the record sufficiently shows a cloud upon the title to warrant the interposition by a court of equity.

*Id.*

In the present case, as in *Mahen*, there is no "lien" as Missouri law defines it because CRP's notice of foreign judgment was against O'Sullivan, not O'Sullivan and his wife, who hold the property as tenants by the entirety. Nevertheless, there is a "lien" as federal law defines it because a "cloud upon the title" to the property exists under Missouri law, just as it did in *Mahen*, by virtue of CRP's filing of the notice of foreign judgment. That cloud on title constitutes a "charge against or interest in the property." 11 U.S.C. § 101(37). As the BAP observed:

> The recording of CRP's foreign judgment in Barton County created a cloud on the Debtor's title on his exempt homestead, which constituted a "charge against or interest in property" under Missouri law and qualified as a "judicial lien" under the Bankruptcy Code. 11 U.S.C. § 101(36). Where the record does not show on its face that recorded documents (such as a judgment) are void, a cloud on title may be created warranting the imposition of a court of equity to remove it.

*In re O'Sullivan*, 2017 WL 4844244, at *3.

Consistent with *Mahen*, the BAP cited the "practical difficulties [that] may exist for an ordinary searcher of the records or even a title company trying to determine whether the judgment [against O'Sullivan] created a lien and the Property is liable for execution." *Id.* at *4. The result is that the property's value and marketability of title would be affected. We agree with the BAP that CRP's recording of the foreign judgment created a cloud on title under Missouri law sufficient to constitute a "charge against or interest in" O'Sullivan's property under the Bankruptcy Code. 11 U.S.C. § 101(37).

Therefore, we conclude that the cloud on title created by "CRP's recording of its judgment '*fastened an existing, but presently unenforceable lien*' on the Property." *In re O'Sullivan*, 2017 WL 4844244, at *4 (quoting *In re O'Sullivan*, 569 B.R. at 168). As a result, we hold that application of § 522(f) will clear the cloud on title to

Appellate Case: 17-6012     Page: 10     Date Filed: 02/01/2019 Entry ID: 4752109

O'Sullivan's property and, as a result, the bankruptcy court properly granted O'Sullivan's motion to avoid the lien.

### III. *Conclusion*

Accordingly, we affirm the judgment of the BAP.

_____